IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ENERGY INNOVATION COMPANY, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:18-CV-03919-TCB |
| NCR CORPORATION, | ) ) | |
| Defendant. | ) | |

**DEFENDANT NCR CORPORATION'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## I.     INTRODUCTION

Over 15 years ago, NCR Corporation ("NCR") acquired Copient Technologies, LLC ("Copient"), which at that time owned the patent-in-suit, U.S. Patent No. 6,119,933 ("the '933 patent").  The acquisition was subject to the completion of two important closing conditions: (1) that Copient extinguish its liability under the continuing royalty obligation that existed under the agreement between Copient and the named inventors of the '933 patent assigning the '933 patent to Copient, and (2) that Copient acquire a covenant not to sue that would be transferred to NCR upon closing of the acquisition to avoid future disputes over the

'933 patent.  Both of those closing conditions were met, and on March 26, 2003, a covenant not to sue under the patent-in-suit was transferred to NCR.

The covenant was broad and unequivocal, providing that Mr. Wong and Mr. Miles and their successors and assigns "covenant and agree not to initiate, maintain, authorize, or participate in *any* suit, claim, counterclaim, or action, whether in law or equity, against Assignor [Copient] or its successors, assigns, and legal representatives" alleging that the accused Copient Solution technology infringes any claim of the '933 patent.  The Covenant Not to Sue leaves no room for the patent infringement claim now asserted by Plaintiff Energy Innovation Company, LLC ("EIC").  In fact, EIC *admits* that the covenant precludes this action.  Accordingly, EIC's infringement claims should be dismissed in their entirety, and judgment of non-infringement should be entered in NCR's favor.

## II.     FACTUAL BACKGROUND

The named inventors of the '933 patent, Earl Chang Wong and Gordon M. Miles assigned their interest in the patent to Copient on September 29, 2001. (Decl. of Caroline Wray dated October 22, 2018 ("Wray Decl."), Ex. 1 ("2001 Patent Assignment Agreement")).  In exchange, Copient granted them an ongoing royalty.  (Defendant NCR's Statement of Material Facts in Support of Its Motion

for Summary Judgment ("SMF") ¶ 2; Dkt. 20, Ex. B ("2003 Assignment Patent Assignment Agreement") ¶ 2).

In March 2003, NCR agreed to purchase all assets of Copient. (SMF ¶ 3; APA). Prior to closing of the asset purchase agreement, Copient and the named inventors executed a written agreement ("the 2003 Patent Assignment Agreement") by which Copient assigned "all right, title, and interest" in the '933 patent back to the named inventors. (SMF ¶ 4; Dkt. 20, Ex. B, 2003 Patent Assignment Agreement ¶ 4). In addition to assigning the patent, Copient paid the named inventors $250,000, as well as all royalties payable to the inventors under the 2001 Patent Assignment Agreement as of the date of this payment. (SMF ¶ 5; *Id.* ¶¶ 2-3).

In consideration, the named inventors acknowledged that they would not be entitled to any further royalties under the 2001 Patent Assignment Agreement and granted Copient and "its successors, assigns, and legal representatives" a covenant not to sue for any alleged infringement of the '933 patent. (SMF ¶ 6; *Id.* ¶ 7). The covenant provided as follows:

> Assignees [Earl Wong and Gordon Miles] jointly and severally, and on behalf of all heirs, devisees, executors, personal representatives, administrators, successors, assigns, licensees, and legal representatives, hereby covenant and agree not to initiate, maintain, authorize, or participate in any suit, claim, counterclaim, or action, whether in law or equity, against Assignor [Copient] or its successors,

3

assigns, and legal representatives, for any cause of action or liability arising from or related to or based in whole or in part on: (a) any alleged infringement of the Patent or any claim thereof; and/or (b) any alleged infringement of Assignee's intellectual property rights in and to the Patent and the Invention: This Covenant shall be limited to the technology developed by Assignor, referred to as "Yellow Box" and its administration software "Logix" heretofore developed by the Assignor and any future modifications thereof.

*Id.*

Assignees Wong and Miles know full well that NCR would be the beneficiary of the covenant not to sue. The 2003 Patent Assignment Agreement was expressly contingent on Copient closing an "asset purchase transaction" with NCR "whereby NCR Corporation acquires substantially all of the assets of Assignor [Copient], on or before May 1, 2003." (SMF ¶ 7; *Id.* ¶ 1). The Agreement further provided that "Assignor [Copient] may assign all of its rights and benefits hereunder to a successor in interest to all or substantially all of the assets of Assignor without obtaining the consent of the Assignees [Earl Wong and Gordon Miles]" and that "[e]xcept as otherwise specifically provided herein, the covenants and agreements contained herein will be binding upon and inure to the benefit of the heirs, devisees, executors, personal representatives, administrators, successors and assigns of the respective parties hereto." (SMF ¶¶ 8-9; *Id.* ¶¶ 18-19).

4

In addition, the parties agreed that "[t]his Agreement, including all Exhibits hereto, constitutes the entire agreement between the parties regarding its subject matter" and that any modification "will be effective only if it is in writing and signed by the parties." (SMF ¶ 10; *Id.* ¶ 19).

On March 26, 2003, NCR and Copient executed an Asset Purchase Agreement ("APA") in which Copient agreed to "sell, assign, transfer, convey, and deliver" all of its "property and assets, real or personal, tangible or intangible, relating to, reasonably necessary in, used to support and/or useful in connection with [Copient's interactive direct marketing] Business," except for a limited number of specifically enumerated excluded assets. (SMF ¶ 12; (Wray Decl., Ex. 2, APA at p. 1, ¶ 1). The APA specifically provided that Copient transferred its rights under the 2003 Patent Assignment Agreement to NCR. (SMF ¶ 13; *Id.* ¶ 1(F)); Wray Decl., Ex. 3, Disclosure Schedule to APA § 1(F)(13)).

Almost 15 years later, on February 2, 2018, Earl Wong and Gordon Miles assigned the '933 patent to EIC. (SMF ¶ 14; Dkt. 20, Ex. A). EIC is a holding company whose only asset is the '933 patent. (SMF ¶ 15; Dkt. 20, Counterclaim ¶¶ 39, 40; Dkt. 25 ¶¶ 39, 40). Its sole officer is Earl Wong. (SMF ¶ 16; Dkt. 20, Counterclaim ¶ 40; Dkt. 25 ¶ 40).

On March 5, 2018, EIC filed this action in the U.S. District Court for the Southern District of California, alleging that NCR infringes the '933 patent by making, using, offering for sale, selling and/or importing into the United States "Defendant's 'Copient Solution' functionality (previously licensed under the '933 patent)." (SMF ¶ 17; Dkt. 1 ¶ 10). EIC admits that the Accused "Copient Solution functionality" is the "same product" that is covered by the 2003 Patent Assignment Agreement's Covenant Not to Sue and further admits that Mr. Wong knew about the 2003 Patent Assignment Agreement and that the agreement "precludes" this action. (SMF ¶¶ 18-19; Dkt. 20, Counterclaim ¶ 32; Dkt. 25 ¶¶ 32, 42). Nevertheless, Mr. Wong authorized EIC to initiate and maintain this lawsuit. (SMF ¶ 20; Dkt. 25 ¶ 42).

## III.    LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" only if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co*., 357 F.3d 1256, 1259-60 (11th Cir. 2004) (citations omitted). An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). "Where the material facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs*., 818 F.3d 1122, 1138 (11th Cir. 2016).

To avoid summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence" to support a genuine issue of material fact. *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015) (citation omitted). It "must make a showing sufficient to permit the jury to reasonably find on its behalf." *Id.* (citation omitted).

## IV.    ARGUMENT

### A.    EIC's Claims Are Barred by the 2003 Patent Assignment Agreement

It is black letter law that a Covenant Not to Sue is the equivalent of a license and acts as a complete defense to patent infringement. *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009) (citing *De*

*Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236, 242 (1927)). Even EIC admits that the 2003 Patent Assignment Agreement's Covenant Not to Sue unambiguously bars EIC's claims. (SMF ¶ 19; Dkt. 25 ¶ 42). Accordingly, this lawsuit should be dismissed.

"The interpretation of private contracts is ordinarily a question of state law." *Eli Lilly & Co. v. Air Express Int'l USA, Inc.*, 615 F.3d 1305, 1314 (11th Cir. 2010) (quoting *Chira v. Saal (In re Chira)*, 567 F.3d 1307, 1311 (11th Cir. 2009)). In a patent case in which a district court has federal question jurisdiction, federal common law choice of law rules apply. *Pfizer, Inc. v. Elan Pharm. Research Corp.*, 812 F. Supp. 1352, 1359-60 (D. Del. 1993). Where the contract in question provides that it is to be construed in accordance with the law of a particular state, federal courts usually give effect to that provision. *Id.*; *see also Novamedix, Ltd. v. NDM Acquisition Corp.,* 166 F.3d 1177,1180 (Fed. Cir. 1999) (noting, in a patent case, that the settlement agreement in question contained a choice of law provision and applying the law of the chosen state for purposes of contract interpretation).

The 2003 Patent Assignment Agreement provides that the agreement "shall be governed by and construed in accordance with the laws of the State of Indiana, excluding all conflict of law provisions thereof." (SMF ¶ 11; Dkt. 20, Ex. B, 2003 Patent Assignment Agreement ¶ 12). Indiana follows the "four corners" rule of

contract interpretation. *Schmidt v. Schmidt*, 812 N.E.2d 1074, 1080 (Ind. Ct. App. 2004). Under Indiana law, an unambiguous contract is given its plain and ordinary meaning, and no extrinsic evidence is admissible to explain, add to, or vary the terms of the agreement. *Louis & Karen Metro Family, LLC v. Lawrenceburg Conservancy Dist.*, 616 F.3d 618, 622 (7th Cir. 2010) (applying Indiana law); *Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum, LLC*, 653 F. Supp. 2d 895, 912 (N.D. Ind. 2009). "An ambiguity does not arise simply because the parties disagree on the interpretation; rather, contract language is ambiguous only if reasonable people could come to different conclusions about its meaning." *Bitler Inv. Venture II, LLC* at 912-13 (citations omitted).

As EIC admits, the 2003 Patent Assignment Agreement unambiguously precludes this action. (SMF ¶ 19; Dkt. 25 ¶ 42). The agreement expressly provides that "Assignees [Earl Wong and Gordon Miles] . . . on behalf of all successors [and] assigns . . . covenant and agree not to initiate, maintain, authorize, or participate in any suit, claim, counterclaim, or action . . . against Assignor [Copient] or its successors, assigns, and legal representatives, for any cause of action or liability arising from or related to . . . any alleged infringement of the ['933] Patent or any claim thereof." (SMF ¶ 6; Dkt. 20, Ex. B, 2003 Patent Assignment Agreement ¶ 7; Dkt. 25 ¶ 42).

The Covenant Not to Sue further provides that the covenant applies to any claims regarding "the technology developed by Assignor, referred to as 'Yellow Box' and its administration software 'Logix' heretofore developed by the Assignor and any future modifications thereof." *Id.* EIC has admitted that the accused "Copient Solution functionality" is the "same product" that is covered by the Covenant Not to Sue. (SMF ¶ 18; Dkt. 20, Counterclaim ¶ 33; Dkt. 25 ¶ 33).

There is no ambiguity in the covenant, and accordingly, under Indiana law, the covenant should be given its plain and ordinary meaning. The plain language of the covenant precludes EIC's claims that NCR infringes the '933 patent by making, using, selling, offering for sale, or importing into the United States the accused Copient Solution functionality, and accordingly, EIC's claims should be dismissed.

### B.    NCR Is Protected By the Covenant Not to Sue

NCR is unquestionably protected by the covenant. The 2003 Patent Assignment Agreement expressly precludes claims for infringement of the '933 patent "against Assignor [Copient] or its **successors, assigns**, and legal representatives . . . ." (SMF ¶ 6; Dkt. 20, Ex. B, 2003 Patent Assignment Agreement ¶ 7) (emphasis added). It further provides that "[e]xcept as otherwise specifically provided herein, the covenants and agreements contained herein will

10

be binding upon and inure to the benefit of the . . . successors and assigns of the respective parties hereto."  (SMF ¶ 9; *Id.* ¶ 19).

As the purchaser of substantially all of the assets of Copient, including Copient's rights in the 2003 Patent Assignment Agreement, NCR is an "assign" and/or "successor" of NCR.  The agreement does not expressly define either term, but the term "assign" is widely understood to simply refer to "[s]omeone to whom property rights or powers are transferred by another." Assign, Assignee, Black's Law Dictionary (10th ed. 2014).  Because Copient transferred substantially all of its assets, and specifically its rights in the 2003 Patent Assignment Agreement, to NCR, NCR is an "assign" of Copient with respect to the agreement.

The assignment clause of the 2003 Patent Assignment Agreement also suggests that NCR is a "successor" within the meaning of the agreement by characterizing a purchaser of all or substantially all of Copient's assets as a "successor in interest."  (SMF ¶ 8; Dkt. 20, Ex. B, 2003 Patent Assignment Agreement ¶ 18) ("Assignor [Copient] may assign all of its rights and benefits hereunder to a ***successor in interest to all or substantially all of the assets of Assignor***.") (emphasis added).  Because NCR purchased substantially all of Copient's assets through the APA, it is also a "successor" of Copient within the meaning of the agreement..

11

Moreover, the contingency clause of 2003 Patent Assignment Agreement confirms the parties' intent for the Covenant Not to Sue to transfer to NCR upon its purchase of Copient's assets. The agreement is expressly contingent on Copient and NCR closing "an asset purchase transaction," which the agreement elsewhere characterizes as "the acquisition of Assignor [Copient] by NCR Corporation." (SMF ¶ 7; Dkt. 20, Ex. B, 2002 Patent Assignment Agreement ¶ 1).

Thus, the parties expressly contemplated that NCR would acquire substantially all of Copient's assets shortly after the 2003 Patent Assignment Agreement was executed. And the agreement's express statement permitting Copient to transfer its rights under the agreement to "a successor in interest to all or substantially all of the assets of Copient" without obtaining prior written consent from Mr. Wong and Mr. Miles demonstrates that the parties specifically contemplated that Copient would transfer its rights—including the Covenant Not to Sue—to NCR, a successor or assign. (*See* SMF ¶ 8; Dkt. 20, Ex. B, 2003 Patent Assignment Agreement ¶ 18).

Accordingly, both the unambiguous language of the Covenant Not to Sue and the related provisions of the 2003 Patent Assignment Agreement make clear that NCR is protected by the covenant as an "assign" and/or "successor" of Copient.

### C.    EIC Is Bound By the Covenant Not to Sue

EIC is bound by the Covenant Not to Sue.  Because a patent owner cannot transfer an interest greater than it possesses, an assignee of a patent takes the patent subject to all prior licenses, covenants, or other legal encumbrances on the patent. *Datatreasury Corp. v. Wells Fargo & Co.,* 522 F.3d 1368, 1372 (Fed. Cir. 2008) (explaining that agreements involving the actual use of the patent "run with the patent" and are binding on subsequent owners).  EIC cannot credibly contend that it did not take title to the '933 patent subject to the Covenant Not to Sue NCR. And in fact admits that it did.  (SMF ¶ 19; Dkt. 25 ¶ 42).

The language of the 2003 Patent Assignment Agreement confirms this by expressly stating that Mr. Wong and Mr. Miles granted the Covenant Not to Sue "on behalf of all heirs, devisees, executors, personal representatives, administrators, successors, assigns, licensees, and legal representatives" and by further providing that "the covenants . . . contained herein will be binding upon and inure to the benefit of the . . .  successors and assigns of the respective parties hereto."  (*See* SMF ¶¶ 6, 9; Dkt. 20, Ex. B, 2003 Patent Assignment Agreement ¶¶ 7, 19).

Thus, as EIC admits (SMF ¶ 19; Dkt. 25 ¶ 42), the Covenant Not to Sue unambiguously precludes EIC from bringing this action against NCR.

### D.    EIC's Arguments Fail

Despite the unambiguous language of the agreement and the plain import of well-settled, black letter law governing covenants not to sue, EIC appears to be prepared to raise a number of purported justifications for persisting with its claims. None of them has merit.

As explained above, the relevant law governing contract interpretation prohibits the use of parol evidence to vary the unambiguous terms of the contract. *See Louis & Karen Metro Family*, 616 F.3d at 622.  Despite this, EIC appears prepared to introduce such evidence.  Dkt. 29 at 6 (asserting that NCR's license defense cannot be decided as a matter of law due to "ambiguity in the agreement at issue (requiring parol evidence)").

But EIC fails to identify any particular ambiguity in a pertinent term, and none exists.  To the extent EIC claims that the Covenant Not to Sue could be interpreted to apply only to claims for ***past infringement*** occurring before the agreement was executed, EIC is incorrect.  The covenant unambiguously applies to "***any*** cause of action or liability arising from or related to or based in whole or in part on: (a) ***any*** alleged infringement of the Patent or any claim thereof."  (SMF ¶ 6; Dkt. 20, Ex. B, 2003 Patent Assignment Agreement ¶ 7).  In fact, the plain language of the covenant directly contradicts any interpretation limiting it to claims

14

of past infringement by stating that the covenant applies to "future modifications" of the accused Copient technology. *See id.*

EIC further appears ready to allege that a mistake or misrepresentation may absolve it from being bound by the Covenant Not to Sue. Dkt. 29 at 6. But any such allegation would be a post-hoc justification for EIC's clear breach of its agreement not to sue. "Under Indiana law, a person is presumed to understand the documents which he signs and cannot be released from the terms of a contract due to his failure to read it." *Clanton v. United Skates of Am.*, 686 N.E.2d 896, 899–900 (Ind. Ct. App. 1997). The language of the 2003 Patent Assignment Agreement is clear and unambiguous. Thus, any claim by EIC that the inventors did not or could not understand the terms of the agreement they signed is simply not plausible and cannot create a genuine issue of material fact. *Harrison*, 746 F.3d at 1298 (11th Cir. 2014). Accordingly, EIC's infringement claims should be dismissed, and summary judgment of non-infringement should be entered in favor of NCR.

## V.    CONCLUSION

For the foregoing reasons, Defendant NCR respectfully requests that the Court grant its Motion for Summary Judgment.

Respectfully submitted, this 22nd day of October, 2018.

/s/ *Rachel F. Gage*
Jeremy U. Littlefield
Georgia Bar No. 547982
Rachel Gage
Georgia Bar No. 141539
Robbins Ross Alloy Belinfante
  Littlefield LLC
999 Peachtree Street NE, Suite 1120
Atlanta, GA  30309-3996
Telephone:  678-701-9381
Facsimile:  404-856-3250
jlittlefield@robbinsfirm.com
rgage@robbinsfirm.com

Matias Ferrario (admitted pro hac)
Caroline K. Wray (admitted pro hac)
KILPATRICK TOWNSEND &
STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101
Telephone:  336-607-7300
Facsimile:  336-607-7500
mferrario@kilpatricktownsend.com
cwray@kilpatricktownsend.com

Counsel for Defendant NCR Corporation

## **L.R. 7.1(D) CERTIFICATION**

I certify that this brief has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C).  Specifically, this brief has been prepared using 14-pt Times New Roman Font.

/s/ *Rachel F. Gage*
Rachel F. Gage

*Attorney for NCR Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 1, 2018, I electronically filed the foregoing Defendant NCR Corporation's Brief in Support of Its Motion for Summary Judgment with the Clerk of Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Rachel F. Gage*
Rachel F. Gage

*Attorney for NCR Corporation*