**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

ENERGY INNOVATION COMPANY, LLC,

    Plaintiff/Counterclaim Defendant,

         v.

NCR CORPORATION,

    Defendant/Counterclaim Plaintiff.

Civil Action No.
1:18-cv-03919-SDG

## ORDER

This matter is before the Court on Counterclaim Plaintiff NCR Corporation's Motion for Summary Judgment [ECF 50]. For the reasons stated below, the motion is **GRANTED**.

## I.   BACKGROUND

### A.   Facts

Unless otherwise noted, the following facts are not disputed by the parties or are supported by undisputed evidence in the record. On September 29, 2001, Earl Wong and Gordon Miles, the named inventors of U.S. Patent No. 6,119,933 ("'933 Patent"), assigned their interest in that patent to Copient Technologies,

LLC.[1] Copient granted Wong and Miles an ongoing royalty in exchange for title to the '933 patent.[2]

In March 2003, NCR conditionally agreed to purchase substantially all of Copient's assets.[3] Prior to the closing of the asset purchase agreement between NCR and Copient, Copient executed a written agreement with Wong and Miles by which Copient assigned "all right, title, and interest" in the '933 Patent back to Wong and Miles ("2003 Patent Assignment Agreement").[4] As part of the 2003 Patent Assignment Agreement, Copient agreed to pay Wong and Miles $250,000, as well as certain royalties.[5] Wong and Miles, in turn, surrendered all other royalties and agreed to certain covenants and conditions.[6]

One of those covenants, colloquially known as a "covenant not to sue," states:

> Assignees jointly and severally, and on behalf of all heirs, devisees, executors, personal representatives, administrators, successors, assigns, licensees, and legal representatives, hereby covenant and agree not to

---

[1]   ECF 54-1, ¶ 1.

[2]   *Id.* ¶ 2.

[3]   *Id.* ¶ 3.

[4]   *Id.* ¶ 4.

[5]   *Id.* ¶ 5.

[6]   *Id.* ¶¶ 5–11.

> initiate, maintain, authorize, or participate in any suit, claim, counterclaim, or action, whether in law or equity, against Assignor or its successors, assigns, and legal representatives, for any cause of action or liability arising from or related to or based in whole or in part on: (a) any alleged infringement of the Patent or any claim thereof; and/or (b) any alleged infringement of Assignee's intellectual property rights in and to the Patent and the Invention.[7]

On March 26, 2003, NCR and Copient executed the asset purchase agreement, whereby Copient assigned its rights under the 2003 Patent Assignment Agreement to NCR.[8]

On February 2, 2018, Wong and Miles assigned all their rights in the '933 Patent to Counterclaim Defendant Energy Innovation Company, LLC ("EIC").[9] While EIC and NCR dispute EIC's assets, corporate structure, and business, EIC previously agreed, and the Court has found, that EIC is a "holding company whose sole asset is the ['933 Patent] and sole officer is Wong."[10]

On March 5, 2018, EIC initiated this action in the United States District Court for the Southern District of California.[11] EIC asserted that NCR infringed the '933

---

[7]   ECF 20-2, at 3 ¶ 7.

[8]   ECF 54-1, ¶¶ 12–13.

[9]   *Id*. ¶ 14.

[10]   ECF 41, at 3. *See also* ECF 20, ¶ 39; ECF 25, ¶ 39.

[11]   ECF 1.

Patent through its Copient Solution functionality, which was previously licensed under the '933 Patent.[12] As EIC's sole officer, Wong authorized EIC to initiate and maintain the lawsuit.[13]

On August 18, 2018, the action was transferred to this Court.[14] On August 30, 2018, NCR filed its answer and asserted three counterclaims against EIC.[15] Counterclaim Count I asserts breach of contract by EIC for allegedly violating the covenant not to sue in the 2003 Patent Assignment Agreement.[16] Counterclaim Counts II and III seek declaratory judgments that NCR did not infringe upon the '933 patent and the '933 patent is otherwise invalid.[17] NCR also seeks its attorney's fees and litigation costs.[18]

On November 29, 2018, the Court granted NCR's motion for summary judgment on EIC's patent infringement claim.[19] The Court specifically found that

---

[12]  *Id.*

[13]  ECF 54-1, ¶ 18.

[14]  ECF 18.

[15]  ECF 20.

[16]  *Id.* ¶¶ 43–48.

[17]  *Id.* ¶¶ 49–59.

[18]  *Id.* at 14.

[19]  ECF 41.

the 2003 Patent Assignment Agreement is a valid and enforceable contract, including the covenant not to sue.[20] The Court also found NCR became Copient's "successor in interest" when it purchased substantially all of Copient's assets, including its rights in the patent assignment agreement.[21] Thus, "when [EIC] acquired the ['933 Patent], it acquired it subject to the covenant not to sue."[22] Therefore, as a matter of contract interpretation, EIC was barred from maintaining its infringement claim against NCR.

The Court's ruling rendered NCR's Counterclaim Counts II and III moot and left Counterclaim Count I (breach of contract) as the sole remaining claim. On March 22, 2019, the Court denied NCR's motion to join Wong as a named defendant based on a lack of personal jurisdiction over him.[23] On April 19, 2019, NCR filed the instant motion for summary judgment on Count I of its counterclaims.[24] EIC responded on May 17, 2019.[25] NCR replied on May 31, 2019.[26]

---

[20]   *Id.* at 8–11.

[21]   *Id.* at 11.

[22]   *Id.*

[23]   ECF 47.

[24]   ECF 50.

[25]   ECF 54.

[26]   ECF 57; ECF 58; ECF 59.

## II.     LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, the party opposing summary judgment must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324.

In determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that party. *Anderson*, 477 U.S. at 255. *See also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and cannot be

made by the district court. *Anderson*, 477 U.S. at 255. *See also Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Summary judgment for the moving party is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.   DISCUSSION

### A.   NCR Is Entitled to Summary Judgment on Its Breach of Contract Claim (Count I).

#### i.   Choice of Law

"In diversity cases, the choice-of-law rules of the forum state determine what law governs." *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013). "Pursuant to Georgia law, contractual choice-of-law provisions will be enforced unless application of the chosen law would be contrary to the public policy or prejudicial to the interests of this state." *Nat'l Freight, Inc. v. Consol. Container Co., LP*, 166 F. Supp. 3d 1320, 1326 (N.D. Ga. 2015) (*quoting CS–Lakeview at Gwinnett, Inc. v. Simon Prop. Grp., Inc.*, 283 Ga. 426, 428 (2008)).

Paragraph 12 of the 2003 Patent Assignment Agreement states: "This Agreement shall be governed by and construed in accordance with the laws

of the State of Indiana, excluding all conflict of law provisions thereof."[27] The parties do not dispute the applicability of Indiana law and neither has suggested that such an application would violate public policy or be prejudicial to the interests of any state. Accordingly, the choice of law provision is valid and Indiana law applies to this dispute.

### ii. Analysis

In Indiana, when "interpreting an agreement, the court is under an obligation to read the agreement in a manner which harmonizes its provisions as a whole and to give effect to the parties' expressed intent." *Trustees of Indiana Univ. v. Cohen*, 910 N.E.2d 251, 257 (Ind. Ct. App. 2009) (*citing Kelly v. Smith*, 611 N.E.2d 118, 121 (Ind. 1993)). "Clear, plain, and unambiguous terms are conclusive of that intent." *Id*. "The construction of an unambiguous contract is a question of law for which summary judgment is particularly appropriate." *Rogovsky Enter., Inc. v. Masterbrand Cabinets, Inc.*, No. 3:15-cv-00022-RLY-MPB, 2016 WL 6432620, at *1 (S.D. Ind. Oct. 31, 2016) (*citing Cohen*, 910 N.E.2d at 257 ("Generally, the construction of a written contract is a question of law for which summary judgment is particularly appropriate.")). The necessary elements of a breach of

---

[27]   ECF 20-2, at 4 ¶ 12.

contract claim are "1) the existence of a contract; 2) the defendant's breach thereof; and 3) damages." *Hopper v. Colonial Motel Props., Inc.*, 762 N.E.2d 181, 187 (Ind. Ct. App. 2002) (*citing Fowler v. Campbell*, 612 N.E.2d 596, 600 (Ind. Ct. App. 1993)).

### 1.    Existence of a Contract

In its November 28, 2018 Order, the Court established that the 2003 Patent Assignment Agreement, executed by Copient, Wong, and Miles, is a valid and enforceable contract.[28] It is undisputed that Wong and Miles assigned their interest in the '933 Patent, including the 2003 Patent Assignment Agreement, to EIC on February 2, 2018.[29] Therefore, the first element in the breach of contract analysis is satisfied.

### 2.    Breach of the Contract

In the February 2, 2018 patent assignment to EIC, Wong and Miles agreed to "sell, assign and transfer to [EIC], the entire right, title and interest in and to [the '933 Patent]."[30] In its November 28, 2018 Order, the Court held that "Energy

---

[28]    ECF 41, at 8–11.

[29]    *Id*; ECF 54-1, ¶ 14.

[30]    ECF 20-1, at 3.

Innovation is bound by the covenant . . . when Energy Innovation acquired the patent, it acquired it subject to the covenant not to sue."[31]

EIC argues that, while the Court held that EIC's infringement claim was barred by the covenant, "that ruling, however, does not necessarily mean that EIC's allegation of patent infringement was against NCR [sic] constituted an actionable breach of the Agreement by EIC."[32] According to EIC, "the Agreement does not create an affirmative cause of action for breach of contract against EIC because EIC is neither a party to, nor an assignee of, the Agreement."[33] In support of its argument, EIC points to paragraph 18 of the 2003 Patent Assignment Agreement, which states:

> A party may not assign this Agreement without the prior written consent of the other parties, provided, however, that Assignor may assign all of its rights and benefits hereunder to a successor in interests to all or substantially all of the assets of Assignor without obtaining the consent of the Assignees. Any other purported assignment without the consent of all other parties shall be void.[34]

---

[31]   ECF 41, at 11.

[32]   ECF 54, at 9.

[33]   *Id.* at 10.

[34]   ECF 20-2, ¶ 18.

EIC argues that Wong and Miles could not have validly assigned the 2003 Patent Assignment Agreement to it because Wong and Miles did not receive any "prior written consent" from NCR to such an assignment. [35] Thus, according to EIC, it cannot be sued for breach of contract.

EIC's argument fails for three reasons. First, paragraph 19 of the 2003 Patent Assignment Agreement states: "Except as otherwise specifically provided herein, the covenants and agreements contained herein will be binding upon and inure to the benefit of the . . . successors and assigns of the respective parties hereto."[36] EIC does not argue that this provision is invalid or unenforceable. Thus, EIC is bound by the Agreement as the successor in interest of Wong and Miles in the '933 Patent.

Second, while EIC was not a named party to the 2003 Patent Assignment Agreement, Wong and Miles assigned all their rights in the agreement to EIC on February 2, 2018. The Court has already held that EIC acquired title to the '933 Patent from Wong and Miles, along with "all prior licenses, covenants, or other legal encumbrances," including the covenant not to sue in the 2003 Patent

---

[35]   ECF 54, at 10–11.

[36]   ECF 20-2, ¶ 19.

Assignment Agreement.[37] According to the plain language of the Agreement, such an assignment of all rights in the '933 Patent by Wong and Miles to EIC required no assignee consent.[38]

Finally, EIC cannot use its sole officer's failure to comply with the terms of the Agreement as a shield to liability. It would be unjust, and against the weight of the relevant authorities, to permit Wong to ostensibly create a shell company, unilaterally transfer the '933 Patent and 2003 Patent Assignment Agreement to that entity, then hide behind a written consent clause to avoid liability.

To be sure, while Wong has submitted multiple contradictory affidavits, the record before the Court shows that EIC's sole business activity is holding the license to the '933 Patent.[39] Wong, nonetheless, asserts in conclusory fashion that EIC "has other, unrelated assets as well, including an office, furniture, fixtures, equipment, business agreements, banking relationships, and selling

---

[37] ECF 41, at 11. *See also id.* at 3 ("Wong and Miles assigned the patent to Energy Innovation, a holding company whose sole asset is the patent and sole officer is Wong.").

[38] ECF 20-2, ¶ 18 ("Assignor may assign all of its rights and benefits hereunder to a successor in interests to all or substantially all of the assets of Assignor *without obtaining the consent* of the Assignees.") (emphasis added).

[39] ECF 54-2, ¶ 5 ("EIC is a small company which owns and licenses the patent-in-suit.").

relationships."[40] Wong does not provide the Court with any evidence of these "agreements" or "relationships" to rebut the evidentiary record. The characterization of EIC as a shell company created solely to pursue this litigation is augmented by Wong's admission that he formed EIC in December 2017—a mere three months before initiating this lawsuit[41]—and EIC's concession that "Wong authorized EIC to initiate and maintain this lawsuit."[42]

Courts have found such consent clauses to be unenforceable or waivable in similar circumstances. *Gallagher v. S. Source Packaging, LLC*, 564 F. Supp. 2d 503, 507 (E.D.N.C. 2008) (applying Indiana law and holding "Indiana courts would strictly construe the anti-assignment clause to ensure that it serves only to protect the non-assigning party from losing material personal performance and from the danger of double liability"); *Traicoff v. Digital Media, Inc.*, 439 F. Supp. 2d 872, 879 (S.D. Ind. 2006) (holding anti-assignment clause does not prohibit assignment of rights and obligations under contract); *Elzinga & Volkers, Inc. v. LSSC Corp.*, 838 F. Supp. 1306, 1313 (N.D. Ind. 1993) ("[T[he court notes that the meaning of a prohibition on assignment is a matter of interpretation for the court. In addition,

---

[40]  *Id*. ¶ 6.

[41]  ECF 45-1, ¶ 4.

[42]  ECF 54-1, ¶ 18.

because the [consent to assign] clause is a restriction on alienation, it must be strictly construed against the party urging the restriction.") (internal citations omitted). *Cf. Salcedo v. Toepp*, 696 N.E.2d 426, 435 (Ind. Ct. App. 1998) ("Ordinarily, a party can waive any contractual right provided for his or her benefit. A condition in a contract may be waived by the conduct of the party.") (internal citations omitted).

At best, EIC's argument demonstrates that *Wong and Miles* breached the 2003 Patent Assignment Agreement by unilaterally assigning the 2003 Patent Assignment Agreement to EIC without seeking or receiving NCR's written consent. EIC cannot, after losing on summary judgment, shield itself behind a contradictory technical argument.

Therefore, the second element in the breach of contract analysis is satisfied.

### 3.    Existence of Damages

To prove damages in Indiana, the plaintiff has "the burden of demonstrating that the defendant's breach was a substantial factor contributing to the damages." *Hopper*, 762 N.E.2d at 187 (*citing Holloway v. Bob Evans Farms, Inc.*, 695 N.E.2d 991, 995 (Ind. Ct. App. 1998)). "The test for measuring damages in a breach of contract action is the foreseeability of such damages at the time of entering into the contract rather than the facts existing and known to the parties at the time of the breach."

*Id.* (*citing Fowler*, 612 N.E.2d at 601). As with most states, Indiana "follows the American Rule, which requires each party to pay his or her own attorney fees." *Rogers Grp., Inc. v. Diamond Builders, LLC*, 816 N.E.2d 415, 420 (Ind. Ct. App. 2004) (*citing Willie's Constr. Co. v. Baker*, 596 N.E.2d 958, 963 (Ind. Ct. App. 1992)). A party may, however, "shift the obligation to pay attorney fees through contract or agreement, and courts will enforce such agreements as long as they are not contrary to law or public policy." *Rogers Grp.*, 816 N.E.2d at 420 (citing *Willie's Constr.*, 596 N.E.2d at 963).*See also Thor Elec., Inc. v. Oberle & Assocs., Inc.*, 741 N.E.2d 373, 382 (Ind. Ct. App. 2000) ("Generally, attorney's fees are not recoverable from the opposing party as costs, damages, or otherwise, in the absence of an agreement between the parties, statutory authority, or rule to the contrary."). Specifically, Indiana courts permit a defendant to recover attorney's fees and litigation costs when a party initiates a lawsuit in derogation of a contractual provision. *Rogovsky*, 2016 WL 6432620, at *3 (permitting defendant to recover attorney's fees and litigation costs as "a natural and foreseeable consequence of litigating a motion to transfer based on a valid forum-selection clause").

NCR seeks "damages including, but not limited, to the attorney's fees and costs it has expended in defending this action for over a year."[43] Paragraph 11 of the 2003 Patent Assignment Agreement contains an indemnification clause:

> Assignees shall indemnify Assignor against and hold Assignor harmless from all damages, liability, and costs (***including reasonable attorneys' fees and costs of litigation or defense incurred by Assignor***) incurred by or warranted against Assignor, where such damages, liability, and/or costs relate to a third party's claim arising out of any breach of this Agreement by Assignees.[44]

EIC filed this lawsuit in violation of the covenant not to sue, which breached the 2003 Patent Assignment Agreement. Like *Rogovsky*, this was the substantial factor contributing to NCR's damages — NRC was required to expend attorney's fees and costs in defending this lawsuit. These damages were foreseeable, as the indemnity clause is conspicuously placed and the Court has already held that Wong should have been aware of the covenants in the four-page 2003 Patent Assignment Agreement.[45] *See also Plymale v. Upright*, 419 N.E.2d 756, 762 (Ind. Ct. App. 1981) ("Common sense dictates, and our system of jurisprudence requires the application of a principle, that parties engaged in the negotiation of a contract or

---

[43]   ECF 50-1, at 6.

[44]   ECF 20-2, at 4 ¶ 11 (emphasis added).

[45]   ECF 41, at 10.

the sale and purchase of property be obligated to protect their interest by reading the attendant documents before signing."). Thus, NCR is entitled to recover its attorney's fees and litigation costs as a proper measure of damages. *Salcedo*, 696 N.E.2d at 436 ("[Defendant] is entitled to a reasonable attorney's fee for successfully defending against [plaintiff's] claim under the Lease Agreement.").

NCR has demonstrated that it is entitled to judgment as a matter of law on its breach of contract claim. Therefore, NCR's motion for summary judgment is **GRANTED**.

### B.   NCR Is Entitled to Attorney's Fees and Costs Pursuant to 35 U.S.C. § 285.

NCR also seeks an award of attorney's fees and costs pursuant to the fee-shifting provision of the Patent Act, codified at 35 U.S.C. §285. That provision states: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 548 (2014) ("Section 285 of the Patent Act authorizes a district court to award attorney's fees in patent litigation."); *Capital Sec. Sys., Inc. v. NCR Corp.*, No. 1:14-cv-1516-WSD, 2018 WL 300549, at *2 (N.D. Ga. Jan. 5, 2018) ("Determining whether a party should be afforded attorney's fees under 35 U.S.C. § 285 requires a two-step inquiry: (1) the court must determine whether the case is 'exceptional' and (2) where the court finds the case is 'exceptional,' the court must determine

whether the requested attorney's fees are appropriate.") (*citing Wedgetail Ltd. v. Huddleston Deluxe, Inc.*, 576 F.3d 1302, 1304 (Fed. Cir. 2009)).

As stated above, NCR's requested attorney's fees are appropriate in this case.[46] Thus, the sole remaining question is whether this case qualifies as "exceptional" under the relevant law. "An exceptional case is one that, under the totality of the circumstances, stands out from others with respect to the substantive strength of a party's litigating position or the unreasonable manner in which the case was litigated." *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1356 (Fed. Cir. 2019) (*quoting Octane Fitness*, 572 U.S. at 554). Examples of exceptionality include "inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." *Wedgetail*, 576 F.3d at 1304–05. *See also Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001) ("Exceptional cases are normally those involving bad faith litigation or those involving inequitable conduct by the patentee in procuring the patent."). The Court has the discretion to consider whether a case is "exceptional" on a case-by-case basis, viewing the totality of the circumstances. *Octane Fitness*, 572 U.S. at 554. The party seeking fees

---

[46]   *Supra* at 14–17.

must show exceptionality by a preponderance of the evidence. *Site Update Sols., LLC v. CBS Corp.*, 639 F. App'x 634, 637 (Fed. Cir. 2016) (*citing Octane Fitness*, 572 U.S. at 558).

NCR contends this case is "exceptional" because "EIC—at the direction of Mr. Wong—had no reasonable basis for bringing this lawsuit in the first place and its bad faith intentions have been apparent since the start."[47] NCR states that "[e]ven if EIC had a reasonable basis for initiating this lawsuit . . . it certainly had no reasonable basis for maintaining it."[48] NCR points to statements in EIC's answer, and Wong's previously-filed affidavits, to argue Wong and Miles created EIC for the sole purpose of asserting an infringement claim against NCR that they were otherwise prohibited from filing pursuant to the 2003 Patent Assignment Agreement. In its Answer to NCR's counterclaims, EIC conceded that "Mr. Wong authorized initiation and maintenance of this action, *and that the referenced agreements preclude it.*"[49] NCR asserts EIC's main objective was to obtain a nuisance settlement.[50] EIC, of course, argues that this case does not qualify as exceptional,

---

[47]   ECF 50-1, at 10.

[48]   *Id*. at 11.

[49]   ECF 25, ¶ 42 (emphasis added).

[50]   ECF 50-1, at 10–13.

its allegations in the Complaint and opposing summary judgment did not lack merit, and it has pursued this litigation in good faith.

The Court agrees this case is "exceptional." The record shows that EIC had no reasonable basis for initiating or maintaining this infringement lawsuit except in bad faith. EIC's Complaint asserted no meritorious theory of infringement. Instead, EIC's entire argument rested on the plain language of the four-page 2003 Patent Assignment Agreement signed by Wong, who personally abided by the covenant not to sue and collected royalties for over a decade until forming a holding company with no assets or business, then using the holding company to sue NCR for infringement three months later. Both Wong and EIC concede they knew the covenant not to sue barred this suit from the outset.[51] Despite NCR's counsel's numerous attempts to curb this suit before NCR expended attorney's fees and costs in its defense, EIC trudged forward.[52]

Thus, EIC's filing and maintenance of this lawsuit with the knowledge that its claims were precluded, solely to undermine the very contract Wong agreed to over a decade prior, is sufficient to make this case "exceptional" and permit fee shifting under 35 U.S.C. § 285. *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 810

---

[51]   ECF 54-1, ¶ 18.

[52]   *See* ECF 44-1; ECF 50-4.

(Fed. Cir. 1990) ("The filing and maintaining of an infringement suit which the patentee knows, or on reasonable investigation should know, is baseless constitutes grounds for declaring a case exceptional under 35 U.S.C. § 285 and awarding costs, attorney fees, and expenses to the accused infringer."). NCR may recover its attorney's fees and litigation costs under the fee shifting provision of the Patent Act.

### C.   Sanctions Are Not Warranted Against EIC's Legal Counsel.

NCR also requests that the Court impose sanctions against EIC's legal counsel pursuant to 28 U.S.C. § 1927:

> Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

In the Eleventh Circuit, there are three requirements for an award of sanctions under § 1927:

> First, the attorney must engage in unreasonable and vexatious conduct. Second, that unreasonable and vexatious conduct must be conduct that multiplies the proceedings. Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, *i.e.,* the sanction may not exceed the costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007). "[A]n attorney multiplies proceedings 'unreasonably and vexatiously' within the meaning of the statute only when the attorney's conduct is so egregious that it is tantamount to bad faith." *Id.* (*citing Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991)). The Court may "impose sanctions for egregious conduct by an attorney even if the attorney acted without the specific purpose or intent to multiply the proceedings." *Id.* at 1241. Sanctions are permissible when "an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." *Id.* However, § 1927 is not a "'catch all' provision designed to serve as a basis for sanctioning any and all attorney conduct courts want to discourage." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997). The Court has the broad discretion to "rely on its inherent power to sanction bad faith conduct in the course of litigation." *Peer v. Lewis*, 606 F.3d 1306, 1315 (11th Cir. 2010).

The Court finds that while EIC's counsel could have—and perhaps should have—taken a more conservative approach and pushed back against EIC's desire to pursue this patent infringement claim, there is insufficient record evidence before the Court to support sanctions. EIC's counsel has declared, under oath, that he engaged in a pre-suit investigation before filing this lawsuit and believed the

claim was "plausible."[53] The sole email relied on by NCR, in which EIC's counsel

requests "any documentation evidencing the [patent] license [NCR is] claiming, as

we am [sic] not aware of any such license," is not enough to demonstrate the level

of bad faith necessary for sanctions.[54] In hindsight, it is easy to say that this action

was meritless and should never have been brought. However, "something more

than a lack of merit is required," and the Court is not firmly convinced that EIC's

counsel acted egregiously or in bad faith.[55] *Amlong*, 500 F.3d at 1242. Therefore, the

Court declines to sanction EIC's legal counsel.

---

[53]   ECF 54-3, at 2.

[54]   ECF 50-4. NCR also asserts EIC's legal counsel "sought to extract a nuisance settlement, below the cost of defense, followed by threats to sue NCR's customers." ECF 50-1, at 12. Repeated attempts to extract a nuisance settlement can be a basis for levying sanctions against an attorney. *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011) ("The record supports the district court's finding that Eon–Net acted in bad faith by exploiting the high cost to defend complex litigation to extract a nuisance value settlement from Flagstar."). However, NCR relies on conclusory statements and fails to provide the Court with any evidence regarding the substance, value, frequency, or merit of the settlement discussions. *See* ECF 44-1 (demand letter from NCR's counsel discussing settlements). Given this lack of evidence, the alleged nuisance settlement attempts do not warrant sanctions against EIC's counsel.

[55]   The Court notes that nothing in the record indicates that NCR pursued Rule 11 sanctions against EIC's legal counsel, which also weighs against a finding of bad faith.

### D.   NCR May Not Hold Earl Wong Personally Liable in this Action.

Finally, NCR requests that the Court hold Wong, a non-party, personally liable for its attorney's fees and litigation costs. NCR asserts that Wong should be held personally liable "even absent joinder and without piercing the corporate veil, to uphold the purpose of Section 285 and prevent individuals from skirting liability by hiding behind the corporate veil."[56]

On January 10, 2019, NCR filed a motion for leave to amend its Counterclaims to add Wong individually as a counterclaim defendant.[57] On March 22, 2019, the Court denied NCR's motion, stating that "[t]he Court is not satisfied that Wong has subjected himself to personal jurisdiction in Georgia."[58] Pursuant to this Order, Wong did not personally defend himself against NCR's Counterclaims or its instant request for personal liability. This lack of representation raises due process concerns. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982) ("Until the court has established personal jurisdiction . . . any assertion of judicial power over the party violates due process."). While Wong may well have dictated EIC's actions before and during

---

[56]   ECF 50-1 (*citing Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 832–33 (E.D. Tex. 2017)).

[57]   ECF 44.

[58]   ECF 47.

this lawsuit, the Court declines to deem him personally liable without holding personal jurisdiction over him. The Court notes, however, that nothing in this Order necessarily forecloses NCR's ability to seek redress against Wong in an appropriate jurisdiction.

## IV.    CONCLUSION

Based on the foregoing, NCR's motion for summary judgment [ECF 50] is **GRANTED**. The Court **ORDERS** NCR to submit a motion, with accompanying affidavits and supporting evidence, articulating its requested damages award within 21 days after entry of this Order. The motion should be accompanied by a proposed final judgment order detailing, in specific dollar amounts, the award NCR believes it is owed. EIC may respond within 14 days after the filing of NCR's motion. None of the briefs should exceed 10 pages in length. No reply brief shall be filed. The Court may, in its discretion, conduct an evidentiary hearing and oral argument to determine the proper award.

**SO ORDERED** this the 20th day of March 2020.

Steven D. Grimberg
United States District Court Judge