## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ENERGY INNOVATION COMPANY, LLC,

    Plaintiff/Counterclaim Defendant,

               v.

NCR CORPORATION,

    Defendant/Counterclaim Plaintiff.

Civil Action No.
1:18-cv-03919-SDG

### ORDER

This matter is before the Court on Defendant/Counterclaim Plaintiff NCR Corporation's motion for attorneys' fees and costs [ECF 67]. For the following reasons, NCR's motion is **GRANTED**.

## I.   BACKGROUND

On March 5, 2018, Plaintiff/Counterclaim Defendant Energy Innovation Company, LLC ("EIC") initiated this patent infringement action in the United States District Court for the Southern District of California.[1] The action was subsequently transferred to this Court on August 18, 2018.[2] On August 30, 2018, NCR filed its Answer and asserted three counterclaims against EIC.[3] On November 29, 2018, the Court granted NCR's motion for summary judgment

---

[1]   ECF 1.

[2]   ECF 18.

[3]   ECF 20.

on EIC's patent infringement claim.[4] On March 20, 2020, the Court granted NCR's motion for summary judgment on its counterclaims and directed NCR to submit a motion requesting a proper amount of attorneys' fees and litigation costs incurred in this action.[5] NCR subsequently filed that motion on April 3, 2020, requesting an award of $111,363.91 in attorneys' fees and costs.[6] EIC filed a response in opposition to NCR's motion on April 17, 2020.[7]

## II.   DISCUSSION

### a.   Calculation of a Reasonable Award of Attorneys' Fees

"Determining a reasonable attorney's fee is a matter that is committed to the sound discretion of a trial judge." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558 (2010). To calculate an award of attorneys' fees in patent cases, the Federal Circuit uses the lodestar method. *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016). *See also Perdue*, 559 U.S. at 551 ("[T]he lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.").[8] The Eleventh Circuit likewise employs the lodestar method in

---

[4]   ECF 41.

[5]   ECF 65.

[6]   ECF 67.

[7]   ECF 68.

[8]   The Court applies Federal Circuit law to calculate attorneys' fees in patent infringement cases. *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1299 (Fed. Cir. 2004). *See also Mattress Safe, Inc. v. Just Encase My Mattress, Inc.*, No. 1:11-cv-2492-WSD, 2012 WL 13012363, at *5 (N.D. Ga. Jan. 30, 2012) ("In patent

all cases involving a request for attorneys' fees. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) ("The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate."). The lodestar method provides a "presumptively reasonable fee amount by multiplying a reasonable hourly rate by the reasonable number of hours required to litigate a comparable case." *Lumen*, 811 F.3d at 483 (internal citations omitted). The Court has wide discretion to adjust the amount based on the results obtained. *Loranger*, 10 F.3d at 781.

### i.     A Reasonable Hourly Rate

Under the lodestar method, the Court must first determine a reasonable hourly rate. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Loranger*, 10 F.3d at 781 (citing *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)). The "relevant legal community" is the "place where the case is filed." *Cullens v. Georgia Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994). The party requesting its attorneys' fees "bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Loranger*, 10 F.3d at 781. There must be more evidence than just an attorney affidavit, as "in line with the goal of obtaining

---

cases, courts apply the law of the Federal Circuit.").

objectivity, satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits." *Norman*, 836 F.2d at 1299. *See also Dillard v. City of Greensboro*, 213 F.3d 1347, 1354–55 (11th Cir. 2000) ("What [an attorney] charges clients is powerful, and perhaps the best, evidence of his market rate; that is most likely to be what he is paid as determined by supply and demand."). In addition, the Court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger*, 10 F.3d at 781.

Since EIC initially filed this case in San Diego, California—and it was subsequently transferred to this Court in Atlanta, Georgia—the prevailing market rates for intellectual property litigation in both cities is relevant. NCR requests the following hourly rates: $615 for attorney Matias Ferrario from the law firm Kilpatrick Townsend (Winston-Salem, North Carolina); $598 for attorney Megan Chung from Kilpatrick Townsend (San Diego, California); $460 for attorney Caroline Wray from Kilpatrick Townsend (Winston-Salem); $310 for attorney Taylor Pfingst from Kilpatrick Townsend (San Francisco, California); $350 for attorney Rachel Gage from the law firm Robbins Ross Alloy Belinfante Littlefield LLC (Atlanta, Georgia); $300 for attorney Emma Bellamy from Robbins

Ross (Atlanta, Georgia); $265 for paralegal Robin Adkins from Kilpatrick Townsend; and $125 for paralegal Kim Bunch from Robbins Ross.[9]

NCR presents ample evidence that the prevailing rates for intellectual property litigation in Atlanta and San Diego are commensurate with, and largely in excess of, the rates charged in this case.[10] NCR also provides evidence that Kilpatrick Townsend is an international law firm with a particular emphasis on intellectual property litigation.[11] NCR attaches detailed profiles of Ferrario, Chung, Wray, Pfingst, and Gage, listing their respective credentials, experience, and accolades.[12] Based on this evidence, the Court finds the requested rates are reasonable for the type of work provided and in line with the prevailing rates of the Atlanta and San Diego legal markets for intellectual property litigation.

EIC does not challenge the reasonableness of NCR's requested rates. Indeed, EIC makes no particularized challenges at all. EIC instead contends it is unreasonable for NCR to have employed six attorneys and two paralegals to bill on this matter. The Court does not agree.

---

[9]   ECF 67-2, at 7–9.

[10]   ECF 67-20; ECF 67-21; ECF 67-22.

[11]   ECF 67-23.

[12]   *See generally* ECF 67.

The Eleventh Circuit has instructed that "[t]here is nothing inherently unreasonable about a client having multiple attorneys." *Norman*, 836 F.2d at 1302. Although EIC asserts that this is a "narrow and straightforward case," EIC's litigation strategy seemingly contributed to NCR's need to employ a large number of attorneys. For example, EIC's decision to sue NCR in San Diego, a forum that was ultimately found to lack venue over this matter, required NCR to obtain California counsel (*i.e.*, Chung and Pfingst). Had EIC sued NCR in the correct forum in the first instance, this may well have limited the number of timekeepers. Further, the detailed timekeeping records provided by NCR undermine EIC's characterization that NCR unnecessarily ran up the bill by using multiple attorneys. Four timekeepers (Chung, Gage, Bellamy, and Bunch) billed less than six hours each, for a cumulative total of 13.1 hours.[13] The time entries show that Wray and Pfingst, two associates, performed the vast majority of the billable work, with Ferrario serving in a supervisory role.[14] The Court finds NCR's utilization strategy entirely reasonable.

### ii.    The Reasonable Number of Compensable Hours

The second lodestar factor requires the Court to ascertain a reasonable number of hours. Fee applicants must "exercise billing judgment" and "excessive,

---

[13]   ECF 67-2, at 11.

[14]   *Id.*

redundant or otherwise unnecessary hours should be excluded from the amount claimed." *Norman*, 836 F.2d at 1301. NCR has submitted detailed hourly timesheets demonstrating the work performed by each of its timekeepers. NCR has also voluntarily reduced its sought-after compensable hours by 73.1 hours based on the work its professionals performed on NCR's unsuccessful motion to join Earl Wong and amend the pleadings.[15] This leaves a total of 288 hours for which NCR requests compensation.

The Court has reviewed the time entries submitted by NCR and finds them reasonable given the work performed. Again, EIC does not raise any specific objections to the reasonableness of any particular item listed in NCR's time sheets. Instead, EIC baldly asserts the Court should reduce NCR's request by $35,000 because "NCR does not explain why . . . it was necessary to have each of three different attorneys . . . bill more than $35,000 on this . . . narrowly-circumscribed, straightforward case."[16]

This generic, blanket assertion is insufficient to merit an hours-reduction. *Norman*, 836 F.2d at 1301 ("Generalized statements that the time spent was reasonable or unreasonable of course are not particularly helpful and not entitled to much weight. As the district court must be reasonably precise in excluding

---

[15]   *Id*. *See also* ECF 44.

[16]   ECF 68, at 3.

hours thought to be unreasonable or unnecessary, so should be the objections and proof from fee opponents.") (internal citations omitted). EIC's subjective characterization of the complexity of this case is likewise unpersuasive. As noted above, there "is nothing inherently unreasonable about a client having multiple attorneys." *Id*. And all of NCR's attorneys and professionals may "be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Id*. Based on a review of the time sheets provided, the Court finds each billing professional acted in a reasonable manner and performed unique tasks necessary to this litigation.

EIC additionally argues the Court should not award NCR any attorneys' fees after December 11, 2018. According to EIC, after the Court granted NCR's motion for summary judgment on EIC's claims, EIC offered to waive its appeal rights to end the matter in exchange for NCR agreeing to forego any claim for attorneys' fees. EIC claims NCR acted unreasonably by declining this request.

The Court does not agree. NCR's decision to pursue its counterclaims is entirely reasonable. Just because EIC may now regret what it started by initiating this lawsuit does not mean NCR should have abandoned its own legitimate claims and efforts to be made whole. EIC cites no authority for its theory. Nor is NCR barred from pursing its reasonable attorneys' fees expended in the preparation of this instant motion for fees. *Cf. Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573,

1578 (Fed. Cir. 1983) ("We interpret attorney fees to include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit."). The Court finds NCR's requested hours reasonable.

### iii.    Calculation of the Lodestar

After determining a reasonable rate and number of hours, the Court must calculate the lodestar by multiplying the two numbers. *Loranger*, 10 F.3d at 781. Relying on the information provided by NCR, the Court has calculated the lodestar and finds $110,315.60 to be a reasonable sum of attorneys' fees.

### iv.    Adjustment of the Lodestar

After determining the lodestar, the Court's final task is to determine if an adjustment is warranted based on the results obtained. "If the result was excellent, then the court should compensate for all hours reasonably expended." *Norman*, 836 F.2d at 1302. Going further, "[i]f the results obtained were exceptional, then some enhancement of the lodestar might be called for." *Id*. A result is "exceptional" if it is "out of the ordinary, unusual or rare." *Id*.

NCR has undoubtably achieved a favorable result in this litigation. A review of the docket shows it has been successful at nearly every step, including obtaining summary judgment on two separate motions. Since NCR has obtained all the relief it sought, it is entitled to the full amount of its reasonable attorneys' fees as calculated under the lodestar. *Alghadeer Bakery & Mkt., Inc. v. TimePayment Corp.*,

No. 1:17-cv-1857-SCJ, 2018 WL 4846015, at *2 (N.D. Ga. May 16, 2018) ("Plaintiff is entitled to 100% of its reasonable attorneys' fees for filing the Motion to Remand because it got 100% of the relief sought in that motion: a remand of this case."). However, there is nothing in the record to suggest this result was "unusual" or "rare" as to justify an upward adjustment. Therefore, the Court finds NCR is entitled to 100% of its requested attorneys' fees; no more or less.

**b.    Costs**

NCR also seeks its litigation costs in the amount of $1,048.31. These costs derive from various court fees and delivery charges.[17] Based on a review of the record, these costs all fall within those taxable under 28 U.S.C. § 1920. *See also Dietz v. SmithKline Beecham Corp.*, No. CIVA 4:07-cv-0077RLV, 2009 WL 1759542, at *1 (N.D. Ga. June 5, 2009) (finding that *pro hac vice* fees qualify as taxable costs). Therefore, NCR is entitled to recover the costs it seeks.

## III.    CONCLUSION

NCR's motion for attorneys' fees and litigation costs [ECF 67] is **GRANTED**. EIC is **ORDERED** to pay NCR $111,363.91 for its attorneys' fees and costs within 45 days after the entry of this Order. The parties are **ORDERED** to file proof of payment with the Court within five days after confirmation of the payment. Upon the filing of a proof of payment or within 60 days of this Order (whichever comes

---

[17]    ECF 67-2, at 11.

first), the Clerk is **DIRECTED** to enter judgment in favor of NCR and close this case.

       **SO ORDERED** this the 11th day of June 2020.

Steven D. Grimberg
United States District Court Judge